IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re INTERNATIONAL AIR TRANSPORT SURCHARGE ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS._____/ | Master File No. C 06-01793 CRB<br><br>MDL No. 1793<br><br>**ORDER AWARDING ATTORNEYS' FEES AND COSTS** |

In this antitrust price fixing class action plaintiffs allege that defendants conspired to fix the price of the fuel surcharge charged to passengers on transatlantic flights. After extensive negotiations the parties reached a settlement which the Court approved. Now pending before the Court is class counsel's motion for an award of $23 million in fees and costs.

**A.    The Settlement Terms**

The settlement provides refunds to members of the settlement classes who purchased tickets sold in the United States ("U.S. Purchasers") or in the United Kingdom ("U.K. Purchasers") for travel on "long haul" flights on British Airways or Virgin Atlantic. According to the parties, approximately 7.2 million United States and United Kingdom Purchasers are eligible for the funds.

//

### 1.     Dollar amounts

British Airways will pay $46,371,405.00, plus $1,000,000.00 to resolve U.S. Purchaser claims and up to £45,539,989.00 ($84.5 million U.S. dollars based on Sep. 24, 2008 exchange rates) to settle the U.K. Purchaser claims.

Virgin Atlantic will pay $12,635,868.00 to resolve U.S. Purchaser claims and up to £27,991,087 ($52 million plus in U.S. dollars based on Sep. 24, 2008 exchange rate) for the U.K. Purchaser claims.  According to the parties, these amounts represent 33.3% of the total fuel surcharges imposed on tickets during the class period.  Plaintiffs' economic expert, Dr. Russell Lamb, declares that these amounts represent "substantially" the entire amount of the unlawful overcharge.

None of these amounts will pay for notice, claims administration, attorneys' fees, or reimbursement of litigation expenses.

### 2.     Opt in or out

The U.S. Purchasers class is "opt out;" those class members who do not exclude themselves will release their claims.

The U.K. Purchasers class is "opt in;" those class members who do not affirmatively choose to participate in the settlement will not release any claims.

Claims may be made through December 31, 2012 for both settlement classes; claims may be made through the mail or on the Internet through country-specific websites.  On both websites claimants have five options for submitting information to make a claim.  One of the options is for corporate class members so they can file a single claim for multiple travelers.

### 3.     Unclaimed funds

Any unclaimed amounts from the U.S. Purchaser class *will not* revert to British Airways or Virgin Atlantic; instead, according to the settlement agreements, any unclaimed amounts will be distributed to Miracle Flight for Kids.  The U.K. Purchasers class, in contrast, is a claims-made settlement; any amounts not claimed revert to defendants.

//

//

2

### B. A Reasonable Fee

After the parties agreed on the terms of the settlement, the parties–with the assistance of a mediator–entered into negotiations as to the amount of fees and costs defendants would pay class counsel. Defendants have agreed to pay counsel $23 million for fees and costs. Counsel's costs are approximately $800,000.00. Thus, the requested fees are $22.2 million and costs are $800,000.00. None of this amount is taken from the monies available to the aggrieved class members.

Defendants' agreement to pay class counsel's fees in addition to the relief provided to the class does not detract from the Court's obligation to carefully scrutinize the fee award. Staton v. Boeing Co., 327 F.3d 938, 964 (9th Cir. 2003). "Ordinarily, a defendant is interested only in disposing of the total claim asserted against it . . . the allocation between the class payment and the attorneys' fees is of little or no interest to the defense. . . ." Id. (internal quotation marks and citation omitted). Thus, the Court must closely scrutinize the fee application and determine an appropriate fee award based on the circumstances of this case. See Vizcaino v. Microsoft, 290 F.3d 1043, 1052 (9th Cir. 2002) ("Rubber-stamp approval, even in the absence of objections, is improper"); see also Zucker Occidental Petroleum Corp., 192 F.3d 1323, 1328 (9th Cir. 1999) ("In a class action, whether the attorneys' fees come from a common fund or are other paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper"); Fed. R. Civ. P. 23(b), Advisory Committee Notes, 2003 Amendments ("In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility.").

The Court has discretion to award fees based on a lodestar or percentage-of-the fund method. See Vizcaino, 290 F.3d at 1047. The only requirement is that the fee be reasonable under the circumstances. See Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000). The Court believes that the percentage-of-the-fund method is appropriate here, and that the $22.2

million fee is fair and reasonable in light of the nature of the recovery, expertise of counsel, the extraordinary notice procedures, the long claims period, and the claims process.

The common fund includes: (1) the approximately $60 million defendants will pay the U.S. Purchasers, (2) the $22.2 million in fees defendants have agreed to pay class counsel, and (3) the approximately $136 million defendants have agreed to pay the U.K. Purchasers on a claims-made basis. If the Court assumes that <u>no</u> money will be paid to the U.K. Purchasers, a $22.2 million fee is approximately 27 percent of the common fund. Such an assumption, however, is unreasonable as thousands of claims have already been made. If the Court conservatively estimates that defendants will actually pay 10 percent of the monies they could potentially owe the U.K. Purchasers, the requested fee is approximately 23 percent of the common fund. Such percentage is less than the Ninth Circuit's 25 percent benchmark, <u>see</u> <u>Powers</u>, 229 F.3d at 1256, and in light of the representation provided to the class, is a fair and reasonable amount, especially given that it was negotiated with the help of a mediator and after defendants agreed on all the other settlement terms. If the Court assumes that defendants will ultimately pay the full amount they are potentially liable for (an unreasonable assumption), the fee is approximately 10 percent of the common fund.

### C. Objections

At the hearing on final approval of the settlement, objectors Duncan Vere-Hopegood, Dominic Hagger and Tracy Hagger correctly advised the Court that the original Notice of Settlement did not include the amount of attorneys' fees and costs sought by class counsel. <u>See</u> Fed. R. Civ. P. 23(h)(1) (providing that class members shall be given reasonable notice of class counsel's motion for fees and costs). This omission occurred because defendants' payment of fees and costs was negotiated after agreement on all the other terms of the settlement. Accordingly, the Court ordered the parties to post notice of class counsel's motion for fees and costs on the settlement website and directed that class members be given until October 20, 2008 to make any objections. The parties did so, and the only substantive objection received by the Court is the Vere-Hopegood/Hagger objection (the "Hagger Objectors").

4

1    The Hagger Objectors contend that the Court should apply United Kingdom law on
2 attorneys' fees, rather than United States law, at least with respect to the recovery for the
3 U.K. Purchasers.  They complain that to fail to do so will encourage the filing of United
4 Kingdom antitrust claims in the United States.  In a previous Order the Court has explained
5 why it has exercised supplemental jurisdiction of the U.K. Purchaser claims.  Docket No.
6 291.  Given the unique circumstances of this case, the Court does not share the Hagger
7 Objectors' concern.  As previously noted, this action does not involve a race to the
8 courthouse; no similar actions have been brought in the United Kingdom.

9    The Objectors also urge the Court to approve a lower fee percentage in light of the
10 large amount of the settlement, the lack of discovery, and defendants' admission of liability.
11 The Court has considered all these factors in determining a reasonable fee.  The Court finds
12 that a fee which is approximately 23 percent of the common fund (assuming defendants pay
13 only 10 percent of the funds available to U.K. Purchasers) is reasonable in light of the
14 complexity of the settlement, the extraordinary notice and claims procedures, and the
15 recovery for class members.

### III.    Class Representative Award

17    Plaintiffs move for an award of $5000 to each of four class representatives and ask
18 that the award be paid out of the attorneys' fee award.  The Court will so order.

### CONCLUSION

20    For the reasons explained above, plaintiffs' motion for an award of $23 million in fees
21 and costs to be paid by defendants separate and apart from the settlement fund is
22 GRANTED.  The motion for a $5000 fee to each of the four class representatives, to be paid
23 from the fee award, is likewise GRANTED.

**IT IS SO ORDERED.**

Dated: October 31, 2008

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE