IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE INTERNATIONAL AIR TRANSPORTATION SURCHARGE ANTITRUST LITIGATION<br>_____/<br>This document relates to: ALL ACTIONS<br>_____/ | No. M 06-01793 CRB<br><br>**ORDER DENYING MOTION TO ENFORCE** |

British Airways ("BA") and Virgin Atlantic Airways, Ltd. ("VAA") (collectively, "the airlines") reached settlements three years ago in this antitrust MDL. See Mot. (dkt. 365) at 1. Carnival PLC, a cruise company, now asks the Court to declare that it is a member of those settlement classes and thus entitled to compensation from the settlement funds. Id. As discussed below, the Court concludes that the Settlement Administrator properly determined that Carnival is not a class member.

## I.  BACKGROUND

BA and VAA entered into settlements with the plaintiffs in this case on February 15, 2008, and the Court approved the settlements on October 3, 2008, retaining jurisdiction over their enforcement. See dkt. 293, 294. The settlement agreements both defined the settlement class as:

> [A]ll Persons to whom, in the period beginning on August 11, 2004 and ending on March 23, 2006, [BA or VAA] sold, in the United Kingdom, at least one coupon for passenger air travel on a flight operated by [BA or VAA] and as to which the long-haul fuel surcharge was paid and not refunded in whole or in part as of the date of the Settlement Agreement.

Mot. at 5.

Carnival asserts that, during the relevant time period, it purchased about 130,180 tickets from BA and VAA combined, the great majority of which were used by Carnival's passengers, and a minority of which were used by Carnival's crew members. Id. at 1.[1] Carnival explains that it does not include a line-item charge to its passengers for air travel; rather, the air travel is bundled together with a variety of services, such as dining, entertainment, and travel to ports of call "to create a single, unique product – a Carnival cruise vacation – for which there is but one total price." Id. at 3. Carnival had purchase agreements with BA and VAA which provided that Carnival would reserve airline tickets up to nine months prior to departure, and had to pay for those tickets about six weeks before departure. Id. Carnival represents that, because it had to pay for the tickets at the time it committed to purchase them, which was often before it had identified a customer to use the tickets, it was responsible for any failure to fill the seat. Id. The airlines' only recourse for failure to pay for tickets was with Carnival, the airlines provided rate quotes directly to Carnival, and notices of fuel surcharge increases also went directly to Carnival. Id. at 3-4. Carnival thus considers itself a direct purchaser of the airline tickets. See generally Mot.

In April 2010, the Settlement Administrator, Kenneth R. Feinberg, denied Carnival's request for compensation under the settlement funds. See Libow Decl. Ex. E (dkt. 375-5). The Settlement Administrator explained:

> It is my conclusion that the parties' contracts and course of dealing indicate that Carnival issued tickets as an agent for the airlines and the passengers paid these fares and surcharges. Accordingly, under the Settlement Agreement the appropriate Settlement Class Members are the airlines' passengers, rather than Carnival, and the passengers, rather than Carnival, are entitled to the refund for the fuel surcharge on the tickets.

Id. at 1. He stated that his conclusion was based on four considerations: (1) that the passengers who purchased cruises had the option of buying the airline tickets either from

---

[1] According to Carnival, the Settlement Administrator "recently determined that Carnival is entitled to compensation from the settlement funds for about 2,823 tickets purchased on BA for business travel by Carnival crew members and about 276 tickets on VAA for business travel by Carnival crew members," and asserts that it is "not seeking compensation on those approximately 3,099 tickets." Id. n.1. The parties confirmed at the motion hearing that the tickets Carnival purchased for its crew members are not at issue in this Motion.

2

Carnival or separately, but that in both cases the passenger had to pay the surcharge; (2) that "[i]n calculating what to charge the passenger for the air ticket . . . Carnival had to take into account the fuel surcharge in its pricing and the passenger had to pay the fuel surcharge;" (3) that under the contracts with BA and VAA, Carnival "purchased as an agent;" and (4) that Carnival's contention that it was a "principal," not an agent, was based on regulations unrelated to the settlement agreement. Id. at 1-2.

Carnival sought reconsideration of the Settlement Administrator's decision, which he denied. See Mot. at 6. The Settlement Administrator found that Carnival's submission did not warrant reversal of his initial decision "that the individual Carnival customers, who purchased tickets for air travel and paid the fuel surcharge, are the direct purchasers who are entitled to claim a refund under the Settlement." See Libow Decl. Ex. I (dkt. 375-9).

Carnival now moves the Court to enforce the settlement agreements by: (1) declaring that Carnival is a member of the settlement classes, (2) declaring that Carnival is entitled to compensation from the settlement funds, and (3) ordering that Carnival be paid compensation from the settlement funds. See Mot. at 15.

## II.   LEGAL STANDARD

"A settlement agreement is treated as any other contract for purposes of interpretation." United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992). Federal courts are to apply state contract law principles to the enforcement of settlement agreements. See O'Neil v. Bunge Corp., 365 F.3d 820, 822 (9th Cir. 2004).[2]

The Settlement Administrator, who was involved in the mediation and negotiation of the settlement agreements, and has been administering the funds for three years, has direct and extensive knowledge of this case. See Opp'n at 10. Thus, the Court must give some deference to his recommendation as to factual matters. See Goodrich Corp. v. Town of Middlebury, 311 F.3d 154, 171 (2d Cir. 2002) ("a district court must give some deference to a [special] master's recommendation where the [special] master has direct and extensive

---

[2] The settlement agreements selected New York law to govern the interpretation of their terms. See Opp'n at 2.

3

1 knowledge about the particular circumstances of a given case") (internal quotation marks
2 omitted). However, the Settlement Administrator's legal conclusion as to the proper
3 construction of the settlement agreements is owed no deference. See Gulf Ins. Co. v.
4 Transatlantic Reinsurance Co., 788 N.Y.S.2d 44, 45 (App. Div. 2004) (applying *de novo*
5 standard of review to construction of contract).

## III. DISCUSSION

The only question before the Court is whether Carnival is a class member.

Carnival's argument that it is a class member relies heavily on antitrust law, characterizing itself as a direct purchaser of the airline tickets, and its passengers as indirect purchasers who cannot recover under Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977). See generally Mot. That argument is fairly persuasive upon initial reading, because the antitrust principles it contains are sound: only direct purchasers may recover for antitrust injury,[3] and a "pass-on" defense is impermissible.[4] But the question before the Court is one of contracts, not antitrust law. See United Commercial Ins. Svc., Inc., 962 F.2d at 856. The Court must determine whether Carnival fits within the definition of a class member <u>as defined by the settlement agreement</u> and irrespective of antitrust principles. It was therefore appropriate for the Settlement Administrator to focus on the "parties' contracts and course of dealing" in making the determination of whether Carnival is a class member. See Libow Decl. Ex. E (April 2010 letter from Settlement Administrator denying Carnival's claim).

### A. Carnival was not the Purchaser

To be a class member under the settlement agreement, one has to be a person to whom BA or VAA sold a coupon for passenger air travel and to which the fuel surcharge was paid and not refunded. See Mot. at 5 (class definition). The Settlement Administrator found that, based upon the purchase contracts between Carnival and BA/VAA, and Carnival's process in

---

[3] See Illinois Brick, 431 U.S. 720 (indirect purchaser was not a proper plaintiff to bring antitrust claim even if indirect purchaser could show that the direct purchaser passed on the alleged overcharge).

[4] See Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481 (1968) ("As long as the seller continues to charge the illegal price, he takes from the buyer more than the law allows. At whatever the price the buyer sells, the price he pays the seller remains illegally high, and his profits would b greater were his costs lower.").

1 attaining the airline tickets from the airlines and providing them to its passengers, Carnival
2 does not fit within that definition. See generally Libow Decl. Ex. E. Importantly, there is no
3 dispute that Carnival remitted money to the airlines and received airline tickets in exchange:
4 the question is whether it actually purchased the tickets, or acted as a conduit for its
5 passengers. Several considerations suggest that Carnival was acting as a conduit.

### 1. Relationship Between Carnival and VAA

Carnival's contract with VAA refers to Carnival as an "agent," but Carnival asserts that "that nomenclature was only a naming convention." Mot. at 4. Nonetheless, the contract describes an arrangement that sounds very much like Carnival is acting as a travel agent.[5]

The contract provides, for example, that "Agents must use the full passport name of each passenger when making CRS bookings," Brooker Decl. Ex. A (dkt. 376-1) § 6.1(p), that "Agents shall not make fraudulent, fictitious or speculative bookings in the CRS, or hold reservations or block space to accommodate expected demand," id. § 6.1(c), and that "A ticket shall not be issued to a customer unless the booking has been confirmed in that class in airline's internal reservation system," id. § 6.1(f).

The airlines also submitted a declaration from the head of National Sales at VAA, which explains that when a Carnival passenger requests that Carnival handle the booking of air travel, Carnival does the booking using the CRS/GDS system, which contains information about VAA's schedules, availability and fares. Brooker Decl. ¶ 9. "The CRS/GDS system is not unique to Carnival – it is used by most travel agents and tour operators that book travel for their customers." Id. No payment is due to VAA until a ticket issues. Id. ¶ 11. Twenty-one days before a flight, Carnival is required to ticket any bookings it is holding for passengers on a VAA flight; when that ticket is issued, it is issued in the name of the specific passenger, not in Carnival's name. Id. ¶¶ 13-14. At that point, Carnival was obligated to remit the agreed fare to VAA. Id. ¶¶ 14, 17. Once paid, Carnival was not permitted to

---

[5] At the motion hearing, Carnival agreed that a traditional travel agent would not be a class member.

5

switch the passenger on the ticket, because, VAA explains, "it is not Carnival's ticket." Id. ¶ 19. Additionally, when the ticket issued, "the customer enters into two contracts, one with Carnival and one with VAA in accordance with the Conditions of Carriage." Opp'n at 5.

This evidence supports the conclusion that Carnival facilitated ticket sales <u>much as any travel agent would</u>, but did not buy tickets on its own behalf.

### 2. Relationship Between Carnival and BA

Carnival's relationship with BA appears to be quite similar. The relationship is governed by two contracts: the IATA and the IT contract. See Opp'n at 5. Under the IATA contract, as with VAA, Carnival uses the CRS/GDS system, through which BA gives agents access to its inventory, including flights, fares and availability. Rodgers Decl. (dkt. 377) ¶ 7. Carnival must provide a passenger's name at booking, and is not required to remit payment until a ticket is issued. Id. ¶ 8. Under the IT contract, Carnival has the right to sell seats to its customers on identified flights as part of a cruise package, and in return, Carnival agreed to pay the Nett Inclusive Tour Fare and assume responsibility for collecting and remitting payment for taxes, fees, and charges. Id. ¶ 9; see also Rodgers Decl. Ex. 2 (IT agreement) ¶ 4.2 ("The Airlines will provide seats at Nett Inclusive Tour Fares on certain routes, for certain prices, in certain classes and subject to specific rules and restrictions, all of which will be detailed in the Rate Sheets."). Under the IT contract, Carnival can only book tickets to named passengers. Id. ¶ 13 (citing Rodgers Decl. Ex. 2 (IT agreement)) § 6.1(g)). And Carnival was again obligated to "incorporate the Conditions of Carriage and all other relevant ticketing and contractual obligations . . . at the request of and for the benefit of the relevant Airline." Id. ¶ 6.1(i).

The language in the BA contracts characterizing Carnival as a "principal," see, e.g., Monts Decl. Ex. A (dkt. 367-1) § 2.3 ("If the Organiser is arranging a Package for the Group which includes travel with the benefit of the Group Nett Rates then the Organiser acts as principal."); Rogers Decl. Ex. 2 § 2.1 (". . . acting as principal, not as the Airline's agent."), does not change the Court's conclusion. Even if the contracts use the word "principal" more broadly than only in the context of the ATOL Regulations,

6

compare Rodgers Decl. ¶ 15 ("The term 'principal' appears for the purposes of the Air Travel Organisers' Licensing Regulations.")[6]; with Rodgers Decl. Ex. 2 (IT agreement) § 6.2 ("Tour Operator shall not hold itself out as BA's . . . agent for the purposes of the ATOL Regulations or otherwise"), such language is not determinative of the issue here: not whether Carnival was technically BA's agent, but whether Carnival purchased the airfares on its own behalf, as a class member.[7]  The evidence previously discussed leads the Court to conclude that Carnival did not purchase the airfares on its own behalf, but performed a consolidating function analogous to that of a travel agent.

### 3. Additional Arguments about Agency

Carnival makes two additional arguments for why it is not an agent.

First, Carnival cites to McCarthy v. Recordex Serv., Inc., 80 F.3d 842, 852 (3d Cir. 1996), in which the plaintiffs sought to circumvent the bar of Havover Shoe and Illinois Brick by arguing that their lawyers had acted as their agents for the purposes of purchasing photocopies. See Mot. at 12-13. The court in McCarthy, 80 F.3d at 852, held that "none of the plaintiffs retained their lawyers to act as mere purchasing agents whose sole objective and function was to buy photocopies for the clients." Id. Carnival argues that the "sole objective and function" of its purchase of tickets was not to arrange air travel on behalf of BA and VAA. Mot. at 13. But even if McCarthy, a Third Circuit case, had precedential value, it is distinguishable here for at least three reasons. First, this case sounds in contract, not antitrust, law. Second, the airlines' argument here is that Carnival was acting like an agent of the defendants – not of the plaintiffs. And third, arguably Carnival's sole function was to sell airline tickets as far as the airlines were concerned. Nonetheless, as previously discussed, Carnival need not have technically been an "agent" to be acting along the lines of a travel agent by purchasing tickets for its clients.

---

[6] The declaration was made by BA's Key Account Manager, who manages BA's account with Carnival. Id. ¶ 2. Nonetheless it is not clear that this individual was involved in the drafting of the agreement or that he has personal knowledge of the purpose of that term.

[7] See also Mot. at 11 (arguing as to agency descriptor that "the Supreme Court recently noted" that "it is not the description of a transaction or a party to it that determines its antitrust significance but the economic substance of the arrangement").

7

Next, Carnival argues without reference to any authority that "[w]hen travel agents sell tickets on behalf of an airline, they charge the fare established by the carrier; they do not price the ticket themselves or exercise any pricing discretion." Mot. at 10. Carnival reasons that "any pricing of air travel is necessarily made by Carnival when it sells single-price, all-inclusive cruise packages," id., and so Carnival cannot be an agent. That argument fails, because Carnival does not contest that it secures the ticket prices that the airlines require. Bundling services together and charging clients for them all at once does not mean that Carnival sets the price for the airline tickets, just that Carnival has flexibility in pricing the entire bundle of services.

**B.      Carnival Never Paid Fuel Surcharges**

Most important, under Carnival's arrangements with the airlines, it was <u>never</u> responsible for paying fuel surcharges. See Opp'n at 12-13. "Fuel surcharges were only levied on tickets that were issued to individual passengers for seats actually flown by the ticketed passengers, and therefore were only paid for by the individual passengers, not by Carnival." Id. at 12; Brooker Decl. ¶ 14 (VAA fuel surcharge at time ticket issued); Rodgers Decl. ¶ 24 ("British Airways only assessed a fuel surcharge if a ticket was issued to a passenger and actually utilized by the passenger"). If a ticket was not issued to an individual passenger, at most Carnival had to pay a fixed fee to the airlines. See Rodgers Decl. ¶ 24. <u>Fuel surcharges were not assessed</u> if no ticket was issued to an individual passenger. <u>Id.</u>; Opp'n at 12. Thus, as the airlines argue, "[w]hatever risk Carnival assumed with respect to the seats that it requested BA reserve for Carnival customers, Carnival was <u>never</u> at risk of paying a fuel surcharge." Opp'n at 12.

This is the most significant fact weighing against Carnival's inclusion in the class. Carnival agreed with the Court at the motion hearing that this case was about the fuel surcharges. That Carnival was never on the hook for the fuel surcharge is consistent with it only purchasing airline tickets on behalf of its passengers, and inconsistent with its being a purchaser entitled to recovery.

8

Importantly, BA conceded at the motion hearing that if Carnival paid a fuel surcharge and there was no customer to pass that charge onto, Carnival would be a class member. To the extent that ever occurred, Carnival should prevail as to those charges. No evidence has been presented to the Court that it ever occurred.

Accordingly, the Court agrees with the Settlement Administrator that Carnival did not purchase tickets for itself but as a conduit.

### C. Carnival's Delay Was Not Improper

Finally, the airlines complain that Carnival's delay in seeking review of the Settlement Administrator's decision threatens to harm other claimants. See Opp'n at 13-14. The Settlement Administrator's initial ruling denying Carnival's claim was 18 months ago, and it has been nearly a year since his denial of their request for reconsideration. Id. at 13. In the meantime, apparently 2,500 Carnival passengers have submitted claims and been issued refunds. Id. The airlines note that under the settlement agreement, each coupon for passenger travel is eligible for only one refund. Id. Therefore, they suggest, Carnival's claim threatens to take money out of its own passengers' pockets.

Be that as it may, Carnival was within its rights to wait as long as it did. Claimants have until December 2012 to submit claims, see id., and so Carnival might have waited another year to even step forward. That so many Carnival passengers submitted claims, presumably believing that they were class members, just underscores that it would be a windfall for Carnival to recover for a surcharge it never paid.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Carnival is not a class member and DENIES the Motion, except as to any instances in which Carnival can demonstrate to the Settlement Administrator that <u>Carnival, and not its passenger</u>, paid the fuel surcharge.

**IT IS SO ORDERED.**

Dated: December 19, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2006\1793\order re carnival mot to enforce.wpd